UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.                               Case No. 22-20185
                                     Honorable Victoria A. Roberts

TODD GROVER FISCHER,

      Defendant.

_____/

## ORDER DENYING DEFENDANT'S
## MOTION TO SUPPRESS EVIDENCE [ECF No. 17]

**I.    INTRODUCTION**

On April 20, 2022, a grand jury returned a superseding indictment charging Todd Grover Fischer ("Fischer") with felon in possession of a firearm and felon in possession of ammunition – both in violation of 18 U.S.C. § 922(g)(1).

Fischer moves to suppress all evidence seized during the execution of a search warrant at his residence.  The motion is fully briefed.  A hearing is unnecessary.

For the reasons below, the Court **DENIES** Fischer's motion [ECF No. 17].

## II.   BACKGROUND

Fischer challenges the sufficiency of the affidavit supporting the

search warrant – i.e., he argues that the affidavit did not establish probable

cause to support the warrant.  Therefore, except where noted, the Court

limits the facts to those contained in the challenged affidavit.

Detective Clifton Morgan II of the Macomb County Sheriff's Office

("MCSO") applied for the warrant on January 12, 2022.  The probable

cause portion of the affidavit states:

> Affiant has been employed with the Macomb County Sheriff's
> Office since 2003.  The Affiant is a Detective with Macomb
> County Sheriff's Office presently assigned to Criminal
> Investigations/Detective Bureau to investigate criminal matters
> within Macomb County.
>
> Affiant is currently investigating the below incident:
>
> On 1/2/2022, a Todd Grover Fischer (03/29/1965) and an
> unknown subject knocked on the door at 35922 Jefferson A13,
> Harrison Twp., MI in an attempt to make contact with an
> Antonio Bartolotta (10/30/1984) regarding owed money from a
> narcotics transaction by acquaintances known by Antonio.  It
> was alleged that Antonio is hiding one of these acquaintances.
> Once the mobile home door was opened, Todd and the
> unknown subject entered the residence without permission.
> Todd produced a double barrel shotgun and began striking
> Antonio in the head multiple times causing injury.  Todd then
> pointed the gun at three other victims in the residence.  Those
> victims included Antonio's fiancé, Anne Marie Petri
> (11/18/1990), and two juvenile victims.  Todd pointed the gun
> and threatened to kill all of them if he didn't receive payment of
> money owed from the narcotics transaction.

Todd then forced Antonio to sign over his motorcycle title to his 1995 Harley Davidson (MI Plate 0RJ53).  Todd then grabbed Anne around the neck with one hand and held the gun close to her head and threatened to take her instead of the motorcycle.

Todd then made Antonio push his motorcycle to Todd's residence, which is known by the victim to be located at 35922 Jefferson Ave. B12, Harrison Twp., MI 48045.  The motorcycle in question has been observed parked in front of this listed mobile home in the days following the initial report on 1/6/2022.

Todd is a full patch member of the Vigilante's M/C and Antonio is an associate member of the Renegade's M/C, both of which are known to be outlaw motorcycle clubs.  Outlaw motorcycle club have been connected to guns, narcotics, and violent felonies in the past.

Affiant believes that . . . obtaining the above will assist with the investigation and prosecution of carjacking, felonious assault and potentially other criminal charges.

[ECF No. 18-2, PageID.143].

The affidavit described the place to search as "35922 Jefferson B12, Harrison Twp., MI 48045. The home is a mobile home trailer . . . . There is . . . a V with a MC underneath it located on the north side of the mobile home in black writing.  This search is to include any and all out buildings, vehicles, storage sheds, mailboxes, and/or compartments within the curtilage of the above listed address."  [*Id.*, PageID.142].

The affidavit described the property "to be searched for and seized" as "Any and all items and instruments that would give evidence to the crime of a carjacking, felonious assault, and other potential criminal charges

relating to this investigation." [*Id.*].  Among other things, this included weapons.  Additionally, the affidavit provided that "Th[e] search is to specifically include the search for the stolen motorcycle (MI Plate 0RJ53) and its secretary of state title." [*Id.*].

Magistrate Ryan Zemke of the 41B District Court of Michigan found the affidavit established probable cause to authorize a search warrant of Fischer's residence.

According to the police report summarizing the search, officers executed the search warrant at 35922 Jefferson Ave. B12 that same day. When they arrived, officers observed Fischer leaving the residence, and Fischer gave them the key to enter his trailer.

During the search, officers found Bartolotta's motorcycle, a bloody secretary of state title for the motorcycle, a .22 caliber handgun, and several rounds of various types of ammunition – including 12-gauge shotgun shells, .22 caliber rounds and .32 caliber pistol rounds.  The firearm and ammunition form the basis of Fischer's charges.

## III.   ANALYSIS

Fischer moves to suppress all evidence obtained during the January 12, 2022 search.  He says the affidavit for search warrant did not establish probable cause "because each of the affidavit's supporting facts was either

4

stale or failed to establish a sufficient nexus between the evidence sought and the residence."  [ECF No. 17, PageID.104].  Fischer also says the affidavit contained false statements and material omissions.

The government says the Court should deny Fischer's motion. It says his motion fails because: (1) the affiant presented sufficient evidence in the affidavit to support a finding of probable cause; (2) there were no material omissions or false statements in the affidavit; and (3) even if the warrant was somehow defective, the good faith exception applies.

### A.   Probable Cause

Under the Fourth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit. *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005).  In order to conclude that an affidavit establishes probable cause, the issuing judge must find that 'given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009)

(quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  A fair probability requires only "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion."  *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990).

To establish probable cause, there must be "a nexus between the place to be searched and the evidence sought." *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006).  "In other words, the affidavit must suggest 'that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought' and not merely 'that the owner of property is suspected of crime.'"  *Id.* (citation omitted).

In reviewing a warrant application for probable cause, the Court must: (1) "'read the affidavit reasonably ... holistically, examining the totality of the circumstances and employing a healthy dose of common sense'"; and (2) "consider both the facts outlined in the affidavit and the reasonable inferences permissibly drawn from those facts."  *United States v. McCoy*, 905 F.3d 409, 416 (6th Cir. 2018) (citation omitted).  Moreover, the Court must accord a magistrate's determination of probable cause "great deference," reversing it only if the magistrate exercised its discretion arbitrarily. *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006).

6

**B.    The Affidavit for Search Warrant Established Probable Cause to Search Fischer's Residence**

**i.    The Affidavit Established a Nexus Between the Evidence Sought and Place Searched**

Fischer says the affidavit sets forth allegations in three components that are intended to establish probable cause that a crime was committed: (1) the alleged assaults and carjacking at Bartolotta's residence; (2) that Fischer forced Bartolotta to push his motorcycle to another residence; and (3) that the other residence belongs to Fischer.

Fischer says these allegations fail to establish a nexus between the residence searched and evidence sought because: (1) the allegations of the assaults and carjacking occurred at Bartolotta's residence and have nothing to do with the residence searched; (2) the allegation that Fischer forced Bartolotta to push his motorcycle to another residence has nothing to do with the contents of the actual residence, as there are no allegations that the motorcycle or anyone or anything ever went into the residence; and (3) "the allegation that Bartolotta knew the residence he pushed the motorcycle to belongs to Mr. Fischer is contained nowhere in his written statement to law enforcement and appears to be false according to Bartolotta's January 6, 2022 statement to Deputy Cleland."  [ECF No. 17, PageID.106].  Fischer's arguments lack merit.

7

First, Fischer's third argument – i.e., that the allegation that Bartolotta knew the residence he pushed the motorcycle to belongs to Fischer is nowhere in his written statement to law enforcement and appears to be false according to his January 6, 2022 statement to Deputy Cleland – mischaracterizes the record.  On January 6, Bartolotta told Deputy Cleland that he was not sure he could trust the MCSO and that he was not going to give him any more details – including Fischer's name and address – until he spoke with the FBI.  The record clearly supports that Bartolotta knew Fischer and knew his address.

As for the probable cause determination, because the affidavit said the residence to be searched belonged to Fischer, that information was relevant to establish the nexus between the residence and evidence sought.  Moreover, contrary to Fischer's contention, this, along with the other facts in the affidavit – i.e., the allegations of the assaults and carjacking and the allegation that Fischer forced Bartolotta to push his motorcycle to Fischer's residence – were sufficient to establish a nexus between the evidence sought and residence searched.

The affidavit established probable cause that: (1) Fischer assaulted Bartolotta (and others) at gunpoint and forced him to sign over the title to his motorcycle; (2) 35922 Jefferson Ave, B12 Harrison Twp. was Fischer's

8

residence; (3) Fischer forced Bartolotta to push the motorcycle to Fischer's residence; and (4) the motorcycle remained in front of his residence in the days following the assault.  Based on these facts, there was "reasonable cause to believe that the specific things to be searched for and seized" – e.g., the guns used during the assault and Bartolotta's motorcycle title – were located in Fischer's residence.  *See McPhearson*, 469 F.3d at 524. Indeed, as the government says, it was reasonable – and indeed common sense – to infer that if [Fischer] was brazen enough to store the victim's clearly identified motorcycle at his residence, that other evidence of this carjacking/robbery, particularly the title, would be found in [his] residence." [ECF No. 18, PageID.129].

The affidavit established a nexus between the evidence sought and Fischer's residence.

### ii.    The Information in the Affidavit Was Not Stale

Fischer says the information in the affidavit was stale when the magistrate made the probable cause determination.

"Stale information cannot be used in a probable cause determination."  *United States v. Perry*, 864 F.3d 412, 414 (6th Cir. 2017) (citation omitted).  While relevant, the length of time between the events in the affidavit and the application for the warrant is not controlling.  *United*

*States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006).  Indeed, the function

of a staleness test "is not to create an arbitrary time limitation within which

discovered facts must be presented to a magistrate." *United States v.*

*Greene*, 250 F.3d 471, 480 (6th Cir. 2001) (citation omitted).  Rather, a

staleness determination is flexible and based on the totality of the

circumstances.  *Id.*  In analyzing whether information is stale, the Court

considers several factors:

> (1) the character of the crime (chance encounter in the night or regenerating conspiracy?),
>
> (2) the criminal (nomadic or entrenched?),
>
> (3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?), and
>
> (4) the place to be searched (mere criminal forum of convenience or secure operational base?).

*United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009) (citation

omitted).

The standard of review for a staleness determination is the same as

the standard to determine the sufficiency of an affidavit: a magistrate must

determine whether probable cause exists under the totality of the

circumstances, and the Court will not reverse a magistrate's decision to

grant a warrant unless it was arbitrarily exercised. *Greene*, 250 F.3d at 480 (citations omitted)

Fischer says the allegations in the affidavit were stale because they are of a single incident which occurred 10 days earlier.

The government disagrees. It says the character of the crime was an intent to permanently deprive Bartolotta of his motorcycle – a continuing crime.  The government says the few days that passed from the carjacking to the search did not render the information stale.  The government says that if anything, the information is quite fresh considering that: (1) documents such as title certificates are not perishable; and (2) since the motorcycle was still at the location, then the title – which has enduring utility and value to the individual who possessed the motorcycle – would logically be there as well.  The Court agrees.

Fischer says the second and fourth factors – i.e., the criminal and the place to be searched – weigh heavily in his favor because: (1) there is no evidence that anyone saw him enter the residence after the alleged assault or cause any evidence related to the alleged crime to be placed in the home; (2) there is no indication that the residence was anything more than a convenience; and (3) there are no allegations that he used this residence to conduct criminal activity.  The Court disagrees.

The second factor is neutral or weighs slightly against Fischer.  There is no evidence that Fischer is "nomadic or entrenched."  The only evidence regarding his movement is that 35922 Jefferson Ave, B12 Harrison Twp. was his residence – and that he made Bartolotta take his motorcycle there.

The fourth factor weighs against Fischer.  Contrary to Fischer's contention that there was no evidence that he used his residence to conduct criminal activity, Fischer made Bartolotta take the motorcycle there and it remained there until the search.  A motorcycle is mobile; if Fischer's residence was a forum of convenience, common sense would suggest Fischer would move the motorcycle.  Moreover, as the government contends, considering that Fischer kept the motorcycle at his residence, it was reasonable to conclude that there was a fair probability that the title to the motorcycle – and possibly other evidence related to the alleged carjacking and assaults – was also located there.

Fischer also says the first factor – i.e., the character of the crime – weighs heavily in his favor.  He says the affidavit alleges a chance encounter that occurred 10 days prior to the request for the search warrant, not any ongoing criminal activity or a reason to believe that any evidence of the crime alleged may be found in the home.

Fischer ignores that the affidavit indicates that officers observed the motorcycle parked in front of his residence in the days following the assaults and armed carjacking.  Therefore, even if the information Bartolotta provided had become stale, the more recent information would have "refreshed th[e] otherwise stale information."  *See United States v. Spikes*, 158 F.3d 913, 924 (6th Cir. 1998) ("[W]here recent information corroborates otherwise stale information, probable cause may be found."). Moreover, as the government says, Fischer's ongoing possession of the motorcycle continued to be a crime.  Considering he kept the motorcycle at his residence, the first factor weighs against Fischer.

Fischer does not address the third factor.  However, this factor also weighs against him.  The motorcycle and its title are not perishable.  And although they are easily moved, evidence showed that Fischer kept the motorcycle at his residence after the assaults and carjacking – which made it reasonable to conclude that the title would be there, too.

The information in the affidavit was not stale and it established probable cause to search Fischer's residence.

### iii. The Affidavit Did Not Contain False Statements or Material Omissions

Fischer says the affidavit contained false statements and material omissions and that he is entitled to a *Franks* hearing.

13

Particularly, Fischer says the affidavit falsely states that he is a full patch member of the Vigilante M/C and that the Vigilante M/C is an "outlaw" motorcycle club.  He claims that neither statement is true, and that the affiant intentionally included the false statements despite knowing they were untrue to cloud the fact that there was no probable cause.

Fischer also says the affidavit failed to include: (1) that Bartolotta made two earlier inconsistent statements: Bartolotta initially told law enforcement that he was on the run from the Renegade Motorcycle Club because a friend of his robbed one of their homes; and then in his January 6, 2022 interview with law enforcement, Bartolotta lied about being an FBI informant and then made allegations of assaults and a carjacking but refused to reveal the assailant's name or location; and (2) that Deputy Cleland could not obtain a name for the owner/occupant of 35922 Jefferson Ave, B12 Harrison Twp. in LEIN. Fischer says these were material omissions which the affiant made to bolster the credibility of Bartolotta.

"A defendant is entitled to a *Franks* hearing if he: 1) makes a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit; and 2) proves that the false statement or material omission is necessary to the probable cause finding in the

14

affidavit." *United States v. Young*, 847 F.3d 328, 348-49 (6th Cir. 2017). The Court has discretion to determine whether to hold an evidentiary hearing regarding alleged misstatements and omissions in a search warrant's affidavit. *Id.* at 348. No hearing is necessary.

The Court finds that Fischer fails to make a "substantial preliminary showing" that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit.

As the government shows, Fischer is incorrect that Vigilante M/C is not considered an outlaw motorcycle club. *See United States v. Wenglasz*, Case No. 17-20246 (E.D. Mich.), ECF No. 1, PageID.1 ("At all times material to this Information, the Vigilante Motorcycle Club . . . was a criminal organization, that is: an outlaw motorcycle club which existed geographically and territorially alongside, and in some instances, in a hostile co-existence with other outlaw motorcycle clubs in various parts of the State of Michigan."). Evidence also supports that Fischer is a member of Vigilante M/C.

Fischer fails to show the affidavit included false statements. Additionally, even if some statements were false, they are not material; the affidavit establishes probable cause without them.

The omissions raised by Fischer are similarly not material to the finding of probable cause.  While it is true that Bartolotta initially gave inconsistent statements, it is clear from the record that he made those statements because he was afraid of Fischer and did not trust law enforcement. More importantly, the information Bartolotta provided in his third interview was consistent with the information two other witnesses – Aaron Cox and Bartolotta's girlfriend/fiancé – provided during their interviews.  The government states, and the Court agrees, that the omission of a reference to prior inconsistent statements – when explained in the context of fear of Fischer, reluctance to identify him, and mistrust of the police – was not material to the finding of probable cause.

Finally, omission of the information that police could not obtain a name on the residence in LEIN is immaterial since Bartolotta and his girlfriend/fiancé identified trailer B12 as Fischer's residence, and law enforcement observed Bartolotta's motorcycle there.  Fischer fails to explain how the lack of a LEIN record of residency means that that was not his residence, or how the lack of this undermined the finding of probable cause.  It did not.

The affidavit for search warrant did not contain material misrepresentations or omissions, and Fischer is not entitled to an evidentiary hearing.

### iv.    Fischer's Reply Brief

In his reply, Fischer repeatedly argues that the affidavit fails to list any particular items law enforcement sought and hoped to seize, and simply asks for a general warrant to go through his home looking for whatever they may find.  This grossly mischaracterizes the affidavit for search warrant.  Among other things, the warrant lists "the stolen motorcycle (MI Plate 0RJ53) and its secretary of state title" as property "to be search for and seized."  [ECF No. 18-2, PageID.142].

## IV.    CONCLUSION

The Court **DENIES** Fischer's motion to suppress evidence [ECF No. 17].

**IT IS ORDERED**.

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  July 8, 2022

17